1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3   In Re:  IRISH BANK RESOLUTION        :    BANKRUPTCY CASE
            CORPORATION LIMITED          :    NO. 13-12159-CSS
4   ------------------------------------
                                         :
5   JOHN FLYNN, SR., et al.,             :    CIVIL ACTION
                                         :
6            Plaintiffs,                 :
    v                                    :
7                                        :
    KIERAN WALLACE, et al.,              :
8                                        :    NO. 14-108-LPS
             Defendants.                 :
9                                   - - -

10                           Wilmington, Delaware
                             Monday, April 21, 2014
11                           *TELEPHONIC ORAL ARGUMENT*

12                                  - - -

13  BEFORE:          HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

14  APPEARANCES:                    - - -

15              THE ROSNER LAW GROUP, LLC
                BY:  FREDERICK B. ROSNER, ESQ.
16
                    and
17
                O'NEILL & COMPANY
18              BY:  LAWRENCE DANIEL O'NEILL, ESQ.
                    (New York, New York)
19
                    Counsel for Flynn Parties
20

21              SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
                BY:  VAN C. DURRER, II, ESQ., and
22                   ANNIE LI, ESQ.

23                  Counsel for the Foreign Representatives of
                    Irish Bank Resolution Corporation Limited
24

25                              Brian P. Gaffigan
                                Registered Merit Reporter

1                          - oOo -

2                   P R O C E E D I N G S

3               (REPORTER'S NOTE:  The following telephonic oral

4    argument was held in chambers, beginning at 4:26 p.m.)

5               THE COURT:  Good afternoon, everyone.  This is

6    Judge Stark.  Who is there, please?

7               MR. O'NEILL:  Yes.  Judge Stark, this is

8    Lawrence Daniel O'Neill for the Flynn plaintiffs, the

9    appellants.  And Frederick Rosner is here also for the

10   appellants.

11              THE COURT:  Okay.

12              MR. ROSNER:  Good afternoon, Your Honor.

13              THE COURT:  Good afternoon.

14              MR. DURRER:  Your Honor, Van Durrer from

15   Skadden Arps Slate Meagher & Flom on behalf of the Foreign

16   Representatives.  With me on the phone as well is Annie Li

17   from my office.

18              THE COURT:  Okay.  Is there anybody else?

19              Just you all; right?

20              MR. O'NEILL:  Yes, that is correct.

21              THE COURT:  I have my court reporter here with

22   me.  For the record, it is the case of In Re:  Irish Bank

23   Resolution Corporation Limited.  It's our Civil Action No.

24   14-108-LPS.  And I set this call basically to discuss the

25   request for direct certification of the appeal to the Third

1    Circuit.  We reviewed the pleadings and tried to follow what

2    was happening or is happening in the Bankruptcy Court and

3    found we needed some further assistance from all of you

4    before we could make a decision, so that is why we're here.

5    Given that it is the plaintiffs or appellants, I guess,

6    request, let's start with them please.  Go ahead.

7         MR. O'NEILL:  Yes, Your Honor.  Lawrence Daniel

8    O'Neill for the appellants.

9         The standard for direct appeal that would apply

10   or does apply in this case is that it is the absence of a

11   controlling decision on these matters in the Third Circuit,

12   and the fact that this is an issue of significant public

13   importance and particularly within the framework of the

14   application of Chapter 15 of the Bankruptcy Code.

15        The case in the Bankruptcy Court involves the

16   seizure of assets of the largest or it was the largest

17   bank in Ireland by the Irish government through special

18   legislation.  The bank had, prior to its termination, it was

19   a solvent institution.  And I am only dealing with the facts

20   for which there is no contention here.  It was a solvent

21   institution.  It had, prior to that point, three operating

22   branches in the United States:  in Chicago, Boston, and New

23   York.  It had had several hundred, if not more, U.S. citizen

24   customers.  It made loans and had done significant business

25   in the United States.  Most of those assets were sold a

1    couple of years ago to various U.S. parties.  But it still

2    retains sums significant to the tune of just under $1

3    billion in U.S. assets.

4            The decision in the Bankruptcy Court

5    unfortunately has no opinion attached to it, so the nature

6    of the facts that were accepted by the Court are difficult

7    to ascertain.

8            THE COURT:  Let me stop you there because that

9    was part of my concern.

10           MR. O'NEILL:  Yes.

11           THE COURT:  First off, I wanted to confirm,

12   there is still no opinion from Judge Sontchi; correct?

13           MR. O'NEILL:  That is correct, Your Honor.

14   There is still no opinion.

15           THE COURT:  Have you heard anything further from

16   him as to whether -- I think the order was unclear whether

17   an opinion may or may not follow.  Is there anything further

18   on that from your perspective?

19           MR. O'NEILL:  No, Your Honor.  There is a

20   notation in hand at the bottom of the first page of the

21   ruling that says that an opinion may follow, but one has not

22   followed.  I presume at this point that one perhaps will not

23   follow.

24           THE COURT:  So given that, and given that we

25   don't know, for instance, some of the factual determinations

1  that may have underlied the decision, doesn't that affect

2  the analysis as to whether this is suitable for an immediate

3  appeal to the Circuit Court?

4         MR. O'NEILL:  Your Honor, I don't believe so in

5  the sense that if we accept the evidence as presented to the

6  Court by the Foreign Representatives as being accepted by

7  the Court in granting the order, and that evidence is in the

8  order and is fairly straightforward.  So if we leave out the

9  contentious bits, the part we don't agree with, I think

10  there is still sufficient evidence, sufficient issues of law

11  to justify a direct appeal.

12         Specifically, the dissolution of the bank and

13  the transfer of its assets to the Irish government,

14  everybody agrees, is a sui generis act.  The IBRC Act, as

15  passed by the Irish legislature in February of 2013, applies

16  only to IBRC.  It applies to no other institution or body

17  in Ireland.  That it does not set up any other regime of

18  bankruptcy or liquidation that applies to any other party.

19         The Act, and it's in the evidence presented in

20  the hearings, abrogates and makes inapplicable the majority

21  of the Irish bankruptcy law as it relates to normal Irish

22  bankruptcy and replaces it with law made, rulings made by

23  the Minister of Finance himself with very limited, we would

24  argue none but that is a disputed fact, with very limited

25  review possible by Irish courts of those decisions.

1     The Minister of Finance oversees the

2     liquidation.  He makes rulings pursuant to that liquidation.

3     Those rulings are sometimes published and sometimes not.

4     And they are binding on the Liquidators.  Thus, he can

5     instruct the Liquidators in any way he chooses.

6     The Minister has created security over the assets

7     of the bank within a time frame which would ordinarily in

8     Ireland be grounds for a challenge of a fraudulent transfer.

9     That challenge is precluded by provisions of the Act which

10    also gives the Minister the right to create new securities

11    over assets of the bank so long as they are in favor of

12    the Irish government and precludes any challenge to those

13    securities.

14    The bank, Irish Bank in its heyday was not only

15    the largest bank in Ireland but it operated three branches

16    in three U.S. cities, New York, Boston, and Chicago, under

17    the approval and the license of the U.S. Federal Reserve.

18    They made loans.  They conducted commercial banking activities,

19    although not High Street Banking activities, up until the time

20    the bank was terminated in February.

21    The bank clearly, it was admitted in the

22    case, overcharged its U.S. customers.  The degree of that

23    overcharging and the nature of that overcharging was

24    disputed but the fact that it did overcharge its U.S.

25    customers was admitted.  And that overcharging resulted in

1    a loss, again, a disputed number, but a significant loss

2    nonetheless to its U.S. customers.

3            The bank was not insolvent at the time that it

4    was, its assets were transferred to the Irish government.

5    And the proceeding in hand is not one of adjustment of debt

6    which implies somehow the correction of or the solution of

7    a problem so as to allow an entity to continue in business

8    in Chapter 11 in the United States or an Examinership in

9    Ireland.  It is, and the evidence is quite clear from the

10   legislative history of the IPRC Act, solely for the purpose

11   of transferring the assets of the bank to the Irish

12   government for the benefit of the Irish taxpayers.

13           It is our strongly held belief that that set of

14   facts, which I don't believe are disputed in the evidence,

15   are insufficient for recognition of a Chapter 15 -- for a

16   Chapter 15 recognition, and it is our belief that accepting

17   a Chapter 15 recognition under those conditions with that

18   evidence, leaving out the disputed evidence, is tantamount

19   to a rubber stamp carte blanche, we will recognize any

20   seizure of any assets of any entity under legislation passed

21   by any government so long as it is couched in the terms of a

22   bankruptcy or liquidation regardless of the nature, the real

23   nature or the true nature of the action that is taken.

24           That has not been the standard set so far in any

25   cases in this Circuit, and is certainly not the standard set

1    *In Re: Betcorp* which it would seem to be the universal

2    standard applied across a broad range of cases, including

3    cited favorably in the *ABC Learning Centres* case in the

4    Third Circuit.

5         I think the fact if this stands, it implies any

6    Chapter 15 filing, regardless of the deficiencies of the

7    foreign proceeding, any bank winding up for the benefit of the

8    governments that have bailed it out, for example, any seizure

9    of corporate assets by any government pursuant to legislation

10   that has the color and the flavor of a bankruptcy regardless

11   of this real intent will be recognized by the Bankruptcy

12   Courts as a valid foreign proceeding is a matter of significant

13   public importance to the U.S. investors, debtors, and to

14   creditors of those institutions.

15        THE COURT:  So if the case were to go forward on

16   appeal to the Third Circuit, the factual basis for it would

17   be what you just outlined?  Is that essentially your view?

18        MR. O'NEILL:  That is correct, Your Honor.

19        THE COURT:  Now, I believe the Bankruptcy Code

20   permits the Bankruptcy Court to revisit the finding of a

21   related foreign main proceeding at any time; is that correct?

22   And, if so, is that pertinent to the issue I have to decide?

23        MR. O'NEILL:  I think that the Court, Your Honor

24   can reconsider under a motion for a reconsideration, but I

25   don't believe the Court can reopen the matter once it has

recognized a foreign proceeding as a foreign main proceeding

absent some evidence of fraud or misrepresentation that

emerges.

THE COURT:  And help me understand how a

certification of your appeal would help materially advance

the bankruptcy pending here as opposed to whatever impact

on other litigation you may want to pursue.

MR. O'NEILL:  On the bankruptcy pending here,

the IBRC liquidation will be completed in a very short

period of time.  The actual timing is unknown, but rumors

and the statements made to the Irish Parliament by the

minister and rumors around the halls of the high court in

Dublin imply that the court will be fully liquidated, IBRC

will be fully liquidated before the end of this year.

The final liquidation of IBRC, of course, will

significantly harm the creditors of the bank who have been

harmed already in this case.  And so that in terms of the

clarity as to the appropriateness of recognizing a foreign

seizure of assets as a bankruptcy, it is important that that

be resolved quickly.

More importantly, though, I think as to the

application of Chapter 15, which is a relatively new

statute, and particularly the application in this Circuit

which is of exceptional importance nationwide because of

Delaware's prominence in the corporate area, that there

needs to be clear clarification as to the actual standards that would be applied in the Third Circuit or should be applied in the Third Circuit to the approval, granting recognition of a foreign proceeding in Delaware.

Moreover, any lapse, any significant lapse of time in the legal process in this case will render any meaningful review of these matters moot because IBRC will have ceased to exist.  The assets will have transferred to the Irish government, in this case to NAMA, and the matter will be moot to undertake before the courts.

THE COURT:  Thank you.  Let me hear from the appellee, please.

MR. DURRER:  Good afternoon, Your Honor.  This is Van Durrer of Skadden Arps Slate Meagher & Flom for the Foreign Representatives.

Just to respond to Your Honor's initial question.  Yes, I do think that the lack of a detailed opinion impacts your ruling today.

First of all, the local rules provide that to the extent that Judge Sontchi would issue an opinion within seven days or so, it would become part of the record.  Judge Sontchi didn't do that.  And now being before him every few weeks in this matter, there is nothing to indicate that he intends to turn back to this unless instructed to do so to provide more detailed findings than what he put on the

record back on December 18 and what he memorialized in the
order itself.

So in light of that, I think that if the Third
Circuit were to consider what the statute is designed for,
mainly, controlling issues of law, it should be clear to
the Third Circuit what those controlling issues of law were
and that the facts upon which the determinations were made.
Candidly, it's not very clear.

We have, both parties prepared detailed findings
of fact and conclusions of law at the time back in November
when the trial in this matter concluded. And it was our
hope that Judge Sontchi would have had the opportunity to
adopt or refuse to adopt some or all of those. So I think
that it is a bit of a challenge. And,

Again, candidly, Your Honor, as a trial judge
for your day job, if I could say that with tongue in cheek,
might be better equipped for sure than the Third Circuit.
They're looking at various drafts of proposed findings of
face and conclusions of law cold. I would like to have the
opportunity for Your Honor's guidance on how to interpret
those based on your more day-to-day experience with trials
and the trial court experience.

Going to the second question you posed, Your
Honor: Does Judge Sontchi have the opportunity to revisit
recognition at any point? There is sort of at least two

1    ways in which that can happen.  Section 1517(d), like David,

2    of the Bankruptcy Code provides that the provisions of the

3    subchapter do not prevent modification or termination of

4    recognition if it is shown that the grounds for granting it

5    were fully or partially lacking or if ceased to exist.  When

6    considering such action, the Court should give due weight to

7    possible prejudice to the party that relied upon the order

8    granting that recognition.  So that is baked right into the

9    statute.

10           In addition, under Section 1522, there is a

11   provision for protection of creditors and other interested

12   parties where a party's interest can apply for relief or

13   the modification of relief following recognition in order

14   to protect our interests.

15           This has actually been pursued in this case.

16   One of our borrowers sought to modify relief to protect what

17   they perceived as confidential information related to their

18   business because we were in the process of marketing their

19   loans for sale and we believed that competitors might have

20   an unfair advantage in viewing their commercial information,

21   so we worked out an agreement.  We actually settled that

22   matter.  That is an instance where people on an individual

23   basis are coming back to court and asking for assistance

24   with respect to what they perceive as negative impacts of

25   recognition on their particular instances.

1          That leads me to a related issue which is

2   another sort of change in circumstances from when this

3   matter was first brought to Your Honor's attention.  And

4   that is that the basis upon which the appellants asked for

5   this expedited relief in part is because there was a New

6   York action that they had brought that had been stayed by

7   virtue of the Section 362 automatic stay that applies upon

8   recognition in this matter, and they argued that they were

9   prejudiced because that action was forestalled and could

10  not proceed until this appeal was resolved.

11         Well, that is not the case anymore.  They

12  presented an amended complaint to Judge Sontchi which Judge

13  Sontchi permitted them to proceed with, and they have in

14  fact proceeded in New York.  So the original alleged prejudice

15  that existed because this recognition of this Chapter 15

16  proceeding is stalling that action, it is just no longer the

17  case, and it might helpful for Your Honor to know that.

18         With respect to the core of our argument, I'm

19  not going to spend a lot of time on this unless Your Honor

20  has specific questions, but there are factual issues.  We

21  highlighted in our papers, for example, that the appellants

22  cited nothing in their proposed findings of fact or conclusions

23  of law as far as factual matter to the effect that Irish

24  Bank Resolution Corp. had branches or agencies operating

25  within the United States at the time of the commencement

1    of the Chapter 15 petition.  So contrary to the settlement

2    comments that Mr. O'Neill made, those are disputed issues of

3    fact.

4                We did present evidence on that, and I think

5    that it was implicit in Judge Sontchi's findings, limited

6    though they were, that he determined that we were in fact

7    eligible for Chapter 15 relief by virtue of not having a

8    branch or agency within the United States for two reasons.

9                Reason No. 1 -- and this was uncontroverted at

10   the trial below -- none of those, whatever you want to call

11   them, branches, agencies or representative offices, and that

12   distinction is important by the way, but whatever you call

13   them, none of them were operating at the end of August when

14   the Chapter 15 was commenced, and the case law is clear that

15   that is the date you look at.  Were you eligible at the time

16   you filed?  And obviously we hadn't opened any since then.

17   We were prohibited under Irish law from operating as a bank.

18   We could only wind down our assets.

19                Second, these terms have meaning within the

20   U.S. statutes.  We cited these in our papers, but a branch

21   or agency has meaning under federal banking laws in the U.S.

22   Specifically, a branch or agency must be able to originate

23   a loan.  A representative office by distinction cannot

24   originate a loan, it can only interact with customers.  In

25   this instance, it was clear from the testimony below that

1    none of the offices of IBRC that were operating in the United

2    States in any bank could originate loans.  Those decisions

3    had to go back to Dublin or an office in the U.K. for final

4    decision.  They could not consummate that transaction all by

5    themselves.  As I said, again, all those offices were closed

6    in any event well before August when the Chapter 15 petition

7    was commenced.

8              Next.  Even setting aside whether there are

9    disputed issues of fact, controlling law, you know, we have

10   *ABC Learning Centres*, which is a very lengthy Third Circuit

11   opinion.  It describes the intent and purpose behind Chapter

12   15 and the trial model law, it highlights how collective and

13   universalistic approaches are preferred to individualistic

14   approaches.  We detailed in our papers how these parties,

15   the Flynns, are focused on their action, their ability to

16   recover.  They prefer the individualistic approach as

17   opposed to the collective approach in collective insolvency

18   proceedings like this.

19             With respect to the insolvency.  Specifically,

20   the model law and the Third Circuit case law does not

21   require that individual creditors get a distribution, for

22   example.  And that was specifically raised and rejected in

23   *ABC Learning Centres*.  It merely requires that the statute

24   be set up that way.

25             By analogy, the statute likewise does not

1    require that the company, in this case IBRC, be insolvent.

2    And that is disputed.  I think the former directors of IBRC

3    take the position that IBRC was insolvent when it was taken

4    over and put through the Irish Bank Resolution Act in

5    February of 2013, and the Special Liquidators offered

6    testimony at the hearing in recognition that they dispute

7    that.  That they have a different opinion with respect to

8    that, and there has not been a final adjudication on that.

9         However, the Chapter 15 statute does not require

10   insolvency.  It merely requires that the entity seeking

11   Chapter 15 relief be the subject of a law relating to

12   insolvency or the adjustment of debt; and the Flynns cannot

13   dispute that the IBRC act, whatever else it does, involves

14   the adjustment of debts.  So regardless of whether this

15   entity is solvent or not, and that is for another day, in

16   another jurisdiction, that would not render IBRC ineligible

17   for Chapter 15 relief.

18        Then the last couple of things that we talked

19   about in our papers, is this a matter of public importance?

20   Not really.  This is such a unique statute, it's not going

21   to come up again, and the only people that are still arguing

22   about this right are the Flynns and IBRC.

23        I want to focus here on something, too, which my

24   colleagues take a little bit of liberty with.  The posture

25   that they tee this up in, Your Honor, is that this is a big

1  bad foreign company beating up on a small, helpless United

2  States citizen.

3         That is simply not accurate.  What the evidence

4  at the trial below was this is an Irish Bank.  There is a

5  clear involvement, I'm not going to dispute it, with the

6  Irish government in Irish Bank, and there is a security

7  interest held by a third party that is also related to the

8  Irish government.  However, the Flynns are Irish citizens,

9  and they happen to live in Florida.  God bless them.  They

10 have a Green Card.  God bless them.  But they have recourse.

11 This is not their only avenue of recourse.  In fact, there

12 are numerous proceedings, multiple proceedings going on in

13 the Irish courts involving the Flynns and IBRC.  So they're

14 not shy about exercising their rights.  So it's just a little

15 unfair to call this a grand notion of public importance

16 between a big foreign government and a small United States

17 citizen when that is just simply not the case.

18        And then the last point, Your Honor, that we had

19 raised is, and I think Your Honor addressed this, too:  What

20 impact does this have on the bankruptcy case?

21        Well, not only is the Flynns' action proceeding,

22 but the standard is, will expediting the appeal by taking it

23 straight to the Third Circuit expedite our bankruptcy case?

24 And, frankly, the matter is that it won't.

25        This appeal is not, other than taking my time

1    and causing me to bill fees to my client, which I am

2    thrilled about, it's not distracting at all from the

3    prosecution of the underlying case.  We've had loan sales

4    since then, we have conducted other business since then, and

5    at the upcoming hearing in May before Judge Sontchi, we will

6    continue to ask the Court to approve further loan sales and

7    other asset distribution.  So we continue to go about our

8    business.  This appeal really does not impact that in any

9    regard.

10           So unless there are further questions, Your

11    Honor, that ends our presentation.

12           THE COURT:  All right.  Mr. Durrer, so then what

13    would you have me do?  I would deny the certification and

14    then enter a briefing schedule on the appeal here?  Is that

15    what you would propose?

16           MR. DURRER:  That would be acceptable, Your

17    Honor.  And then I think that what we would endeavor to

18    do is to walk you through the factual record that we believe

19    supports what Judge Sontchi did, and then Your Honor would

20    have an opportunity to narrow the field of potential legal

21    issues.  And in my view, Your Honor, I think there aren't

22    any, but at a minimum, you would definitely focus what would

23    be a further approach by the Third Circuit on any of these

24    issues that happened to remain.

25           THE COURT:  Alternatively, Mr. Durrer, where you

1  started maybe was a suggestion I could formally I suppose

2  send it back to Judge Sontchi and ask him either to write

3  something or tell us if he is going to?  Was that -- is that

4  another course of action available here?

5          MR. DURRER:  That is definitely another course

6  of action, Your Honor.  And in light of the comments I made

7  about the fact that you're much better equipped to develop a

8  record than is the Third Circuit, certainly Judge Sontchi

9  is even more better equipped.  And I think that the tension,

10 if you look back at the transcript from the December 18th

11 hearing, you will see that this statute, and it's unusual

12 in this regard, specifically says that a party requesting

13 recognition of a Chapter 15 proceeding is entitled to an

14 order at the earliest possible time.

15         And after Thanksgiving and the first couple of

16 weeks of December, approaching fast the end of your holiday,

17 I think that Judge Sontchi realized that he was treading a

18 little bit on that statute by not issuing a ruling.  His

19 preference clearly that he expressed would have been to

20 write more, and his footnote at the bottom of the December

21 18th order expressly says it as well.

22         So I think that is definitely an avenue available

23 to Your Honor, and it actually might be very efficient in

24 terms of putting the meat and potatoes of this matter in front

25 of an appellate court, whether it is you or some other court.

1          THE COURT:  Okay.  Thank you.  Mr. O'Neill, I

2     will give you a chance to respond.

3          MR. O'NEILL:  Your Honor, I will be very brief.

4          I think Mr. Durrer has made my case on the

5     importance of this matter when he said this is a one time

6     action, this case applies only to IBRC, and said it will not

7     be used again.  The fact is this certainly will be used

8     again.  This is basically a nationalization of the assets of

9     a foreign bank which has significant U.S. presence.

10         It's a bit insulting for Mr. Durrer to suddenly

11     decide that my clients are not U.S. citizens because they

12     are merely permanent residents with Green Cards and not U.S.

13     Passport holders.  I think a lot of Green Card holders

14     would be shocked to find that Mr. Durrer thinks they are not

15     in fact U.S. citizens, and U.S. citizens should rely upon

16     foreign courts as their only recourse in an action where

17     they have been defrauded by a foreign bank.

18         I can say that this issue will come up again.

19     It will come up frequently again.  It may come up very soon

20     where you have various foreign governments, for their own

21     purposes, whatever they may be, passing legislation to seize

22     the assets of foreign corporations which have U.S. creditors,

23     investors and parties in them, and using the precedence

24     set in this case, those parties would apply to have that

25     confiscation of the assets, that seizure of the assets

1    recognized as a foreign proceeding before the Bankruptcy

2    Courts of the United States.  That is the real issue here

3    that needs to be decided.

4              If a foreign government passes legislation

5    unique, as Mr. Durrer admits, that applies only to an entity

6    for the purpose of "liquidating" that entity for the benefit

7    of the foreign government exclusively, is that or should

8    that be recognized as a proceeding worthy of the protection

9    of the U.S. Bankruptcy Code?

10             THE COURT:  It's correct, isn't it, that your

11   New York action is going forward at this time, Mr. O'Neill?

12             MR. O'NEILL:  Yes, except the New York action

13   is barred against IBRC, the Special Liquidators and their

14   advisors, as is discovery against IBRC which is the heir

15   to Anglo-Irish Bank which is the party that engaged in the

16   fraudulent behavior to begin with, which is an impediment

17   to that action to the extent that we are not able to obtain

18   the bank records, the account records, and to subpoena

19   those records and to engage in discovery against the Special

20   Liquidators that testified in the Chapter 15 proceeding that

21   they have investigated thoroughly the overcharging issue.

22             I would love dearly to see the results of their

23   investigation, but we are barred from obtaining those pursuant

24   to the stay that has been entered against both us taking

25   action against the Special Liquidators, their advisors, who

1    were in some cases intimately with the bank throughout this

2    period of fraudulent behavior, and against IBRC, the successor

3    institution itself.  So that is an impediment, but, yes,

4    despite the efforts of the Special Liquidators to prevent

5    these cases going forward, Judge Sontchi has allowed us to

6    proceed against all but the bank, the Special Liquidators

7    and their advisors.

8              THE COURT:  All right.  And Mr. O'Neill, what

9    about, if I'm not inclined to certify to the Third Circuit,

10   what would you have me do in the alternative?

11             MR. O'NEILL:  Well, actually, your suggestion of

12   seeking an opinion from Judge Sontchi is actually quite a

13   good one.  I was quite disappointed not to get one because I

14   think that that does impede an appeal of this matter, not to

15   understand what he accepted and what he did not, or in the

16   alternative, we would pursue the appeal through the District

17   Court here in Delaware.

18             THE COURT:  All right.  Well, I'm going to give

19   this a little bit more thought.  I appreciate the input from

20   both of you.  I should say I'm considering truly everything

21   from certifying to not certifying to sending it back to

22   Judge Sontchi.  In saying that, I mean I have concerns with

23   each course of action which is one of the many reasons I

24   have to give it some more thought.

25             I don't know that it's in anyone's interest if I

1   were to certify it and then the Third Circuit takes a look

2   at it and feels they can't really accept the certification

3   or can't do much with it given the status of the case.  I'm

4   concerned with that happening to me as well, plus all the

5   other things I have in front of me.

6          But I'm sure with Judge Sontchi, I'm sure like

7   me, he is very busy as well, and I have plenty of matters

8   where the opinion takes a lot longer to get out than I ever

9   would have hoped, and for all know that is the situation

10  here.  Obviously, I really don't know.

11         So I want to give this a little more thought.  I

12  don't intend to keep it hanging too long, but I'm not prepared

13  to make a decision just now.

14         Is there anything further before we break,

15  Mr. O'Neill?

16         MR. O'NEILL:  Yes.  Your Honor, actually, in light

17  of your comments just now actually, and I've been taking all

18  of that in carefully, perhaps a more appropriate course of

19  action would be to require Judge Sontchi to at least give at

20  least an opinion as to why he granted recognition given the

21  facts in the case.  And then we could revisit certification

22  on that basis to see if there is sufficiency to warrant

23  certification at that point.

24         THE COURT:  Certainly, that is part of what I

25  think I'm considering, so I appreciate understanding your

1    position.

2                    Mr. Durrer, is there anything further?

3                    MR. DURRER:  No, Your Honor.  Thank you.

4                    THE COURT:  Okay.  Thank you all for your time.

5    Good-bye.

6                    MR. O'NEILL:  Thank you, Your Honor.

7                    MR. DURRER:  Thank you.

8                    (Telephone conference ends at 5:03 p.m.)

9

10        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

11

12                              /s/ Brian P. Gaffigan
                               Official Court Reporter
13                              U.S. District Court

14

15

16

17

18

19

20

21

22

23

24

25